IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **DIANE REED BRIGHT, INDIVIDUALLY and as PERSONAL REPRESENTATIVE FOR THE ESTATE OF DECEDENT JAMES SCOTT REED** § § § § *Plaintiff*, § § V. § § **THE CITY OF KILLEEN, TEXAS ANTHONY R. CUSTANCE, RICHARD A. HATFIELD, JR., FRED L. BASKETT, AND CHRISTIAN SUESS** § § § § § § *Defendants*. § | **CIVIL CAUSE NO. 6:20-CV-431** |

**DEFENDANTS HATFIELD, BASKETT AND SUESS'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants Richard A. Hatfield, Jr., Fred L. Baskett, and Christian Suess and make and file this, their Motion to Dismiss under *Federal Rules of Civil Procedure Rule* 12(b)(6), seeking to dismiss Plaintiff's Complaint and the claims and case against them, and in support would respectfully show as follows:

### I.   INTRODUCTION

Diane Reed Bright ("Bright") filed this lawsuit on her own behalf, and on behalf of the estate of James Scott Reed ("Reed"), in relation to a shooting incident that occurred during the execution of a search warrant. Officers of the Killeen Police Department executed a search warrant at Reed's apartment. As they did so, Reed drew a weapon and fired at the officers. Officers returned fire and Reed was hit and died from his injury.

Bright filed this lawsuit alleging that the officers' actions in executing the search warrant violated Reed's Fourth Amendment right to be free from the use of excessive force, and that the officers conspired to do so.

## II.     AUTHORITIES AND ANALYSIS

### A.    STANDARD FOR DISMISSAL UNDER 12(b)(6)

Under *Federal Rule of Civil Procedure* 12(b)(6), a federal court is authorized to dismiss a complaint that fails "to state a claim upon which relief can be granted."  A court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). A Court need not, however, "accept as true a legal conclusion couched as factual allegation" nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Naked "the-defendant-unlawfully-harmed-me accusations," devoid of factual enhancement, are insufficient to survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 557).

Rather, the plaintiff must plead specific facts to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to" demonstrate that he has a "claim to relief that is **plausible on its face.**" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  The Supreme Court has made clear this plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, . . . ." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

B.  **REASONS FOR DISMISSAL UNDER 12(b)(6)**

   1.  *Plaintiff has not alleged a plausible claim of violation of Reed's Fourth Amendment Rights*

The essential elements of a Fourth Amendment claim are: (1) use of force that was clearly excessive to the need; (2) the excessiveness of the force was objectively unreasonable; and (3) injury resulting from the use of force. *See Petta v. Rivera,* 143 F.3d 895, 908 & n.15 (5th Cir. 1998) (discussing the effect of *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992) on Fifth Circuit precedent on the elements of a Fourth Amendment claim). Whether use of force is "clearly excessive" or "objectively unreasonable" is evaluated under all of the circumstances. *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

On the first element, Plaintiff has not alleged any use of force by the officers that resulted in injury to Reed. By Plaintiff's own pleadings, Officer Suess fell to the ground when Reed reached out the window and fired a pistol at the officers. Doc. #1, ¶35. Having fallen to the ground, Suess did not shoot at Reed. Doc. #1, ¶40. Moreover, by Plaintiff's own allegations, which are based on the autopsy report, Reed was hit by one bullet. Reed. Doc. #1, ¶20. Four officers (counting Custance) cannot have fired the one bullet that hit and killed Reed. The approach taken by Plaintiff, grouping the defendants together and accusing them of unlawful conduct without specifying which defendant did what act has previously been held to be insufficient to satisfy the requirements of

Rules 8 and 12. *Mendoza v. J.P. Morgan Mortg. N.A.*, No. 7:17-CV-180, 2017 U.S. Dist. LEXIS 98990, at *9 (N.D. Tex. 2017) ("A complaint does not satisfy the requirements of Iqbal and Twombly by lumping together all defendants, while providing no factual basis to distinguish their conduct."). Without specifying which officer's bullet actually hit and killed Reed, Plaintiff has not adequately alleged a claim against any of the officers. *Twombly*, 550 U.S. at 557 (Naked "the-defendant-unlawfully-harmed-me accusations" are insufficient to satisfy Rule 8).

Plaintiff cannot avoid the deficiencies in her case by lumping defendants together with generalize accusations. In fact, it appears that Plaintiff is attempting a bystander claim. One bullet hit and killed Reed. So other officers, even if they fired, were bystanders to that shooting. To support bystander liability, an officer must not only subjectively recognize that a constitutional violation is occurring, but he must also have a reasonable opportunity to address it but choose not to. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Plaintiff characterizes the scene as chaotic, involving multiple officers performing various tasks, with the shooting occurring as the officers breached the apartment to execute the warrant. Doc. #1, ¶¶20-23. Plaintiff has not alleged how any officer other than the officer that fire the shot that hit Reed not only was aware that Reed's rights were being violated (which they were not), and had the opportunity to stop that violation but chose not to. *Cf. Hanna*, 726 F.3d at 646.

Moreover, on the second element of an excessive force claim, Plaintiff has not alleged facts to show that the use of force was excessive. The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Graham v. Connor*, 490 U.S. 386, 396 (1989). Plaintiff has not alleged facts to show that the officers' conduct was so unreasonable as to be excessive. Try as she might to avoid the reality of the underlying events, Plaintiff simply cannot do so. According to Plaintiff's

own pleadings, the officers were at Reed's apartment to execute a search warrant. Doc. #1, ¶17. By Plaintiff's own allegations, Reed had a .380 semi-automatic pistol when the officers executed the warrant, as the gun was recovered after the shooting. Doc. #1, ¶47. As recounted in Plaintiff's complaint, Officers Hatfield, Suess, and Baskett each provided statements, confirming that each saw an arm reach out of a window of the apartment with a gun, and that each saw and/or heard the gun fire. Doc. #1, ¶¶34-36, 38-41. Thus, from the officer's perspective, Reed presented an immediate danger justifying the use of deadly force. *Ontiveros*, 564 F.3d at 382 ("An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others.").

Plaintiff tries to avoid this logical conclusion, remarkably attempting to allege that Reed did not shoot the .380. By Plaintiff's own allegations, the .380 was not only recovered from beside Reed in his bedroom, but the gun was subjected to DNA testing, Reed was subjected to gun shot residue analysis, and the gun itself had a "stovepipe" jam. Doc. #1, ¶¶48, 51-52. The DNA testing confirmed that Reed's DNA was on the gun. Doc. #1, ¶51. The gun shot residue analysis showed Reed had residue on his hand consistent with having recently shot a gun. Doc. #1, ¶51.

As for the stovepipe jam, Plaintiff describes it as a jam that occurs when a cartridge from a fired bullet does not fully eject, but instead gets caught in the ejection port as the slide returns to a closed position. The open end of the spend round can stick up out of the ejection port, resembling a stove pipe. Doc. #1, ¶48. Plaintiff alleges the .380 had a stovepipe jam and full clip and thus Reed could not have fired at the officers. This is, of course, not how a semi-automatic firearm works. A semi-automatic pistol can hold a round in the chamber, even when the clip is fully loaded. According to Plaintiff's own description, a stovepipe jam occurs when "the cartridge that was *just fired* did not get ejected from the firearm properly. Id. To believe Plaintiff's allegation that Reed

did not fire at the officers, this Court would have to believe that Reed shot his gun at some point prior to the execution of the warrant, the gun jammed, and Reed just left the gun in its jammed condition. This inference is all the more fantastic when Plaintiff's explanation for Reed's acquiring a gun is considered. According to Plaintiff, Reed obtained the pistol for self-protection after a drive-by shooting at his apartment. So Plaintiff's version of the events is that Reed, a man who needed a gun to protect himself, shot his gun at some point in the hours or days prior to the execution of the warrant, the gun jammed, and Reed chose to leave the gun that way. Doc. #1, ¶26. While a court is required to accept a plaintiff's allegations as true in the context of a Rule 12(b)(6) analysis, it is not required to indulge the sort of unwarranted deductions and unreasonable inferences that Plaintiff's case is based on. *Wilkens v. Toyotetsu Am., Inc.*, No. SA-09-CV-515-XR, 2010 U.S. Dist. LEXIS 87394, at *11 (W.D. Tex. 2010) ("The Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."); *FDIC v. Hays*, No. SA-92-CA-0653, 1997 U.S. Dist. LEXIS 24563, at *5-6 (W.D. Tex. 1997) ("[A] court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations.").

Plaintiff also attempts to support the conclusion that the use of force was not reasonable by attempting to create discrepancies in the officers' respective recollection of the events, such as the view each officer had and the number of shots. But the decisive issue is whether, from the perspective of the officers, Reed presented a threat to their lives or the lives of others at the time the officers chose to use deadly force. *Graham*, 490 U.S. at 396. The Fifth Circuit has rejected arguments that this analysis turns on details such as who fired first and the timing of when officers realized the threat to them. *See Ramirez v. Knoulton*, 542 F.3d 124, 131 (5th Cir. 2008). What is relevant is what the officers knew or perceived at the time of the use of force, not parsing out

details after the fact. *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (The law "does not require the court to determine whether an officer was in actual, imminent danger of serious injury, but rather, whether 'the officer reasonably believe[d] that the suspect pose[d] a threat of serious harm to the officer or to others."); *Hicks-Field v. Harris Cnty.*, No. H-12-3650, 2015 U.S. Dist. LEXIS 173488, at *65 (S.D. Tex. 2015) ("[O]nly what the officer on the scene knew at the time of the use of force. Id. Multiple factors may bear on whether the force was reasonable,"). And according to Plaintiff's own pleadings, Officer Hatfield, Baskett, and Suess each saw an arm extend out of the window with a gun. Per these officers' statements, the Rangers report (which recounts that the .380 was recovered from Reed's bedroom beside him), and DNA testing (the content of the statements, report and testing all being recounted in the complaint), Reed was holding the gun. Per the officers' statements, the GSR testing and the stovepipe jam (all of which are recounted in the complaint), Reed fired the gun at least once. These facts demonstrate that reasonable officers in the Killeen officers' position would have perceived Reed to be threat to their lives justifying the use of deadly force, or at least show that Plaintiff has not alleged facts to support a plausible claim that the officers used excessive force. *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003) ("Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others.").

    3.    ***Hatfield, Suess, and Baskett have no conspiracy liability***

Plaintiff also alleges that the defendants conspired to violate Reed's rights in violation of 42 U.S.C. § 1983, and that they engaged in a conspiracy in violation of 42 U.S.C. § 1985(3). A claim of conspiracy under § 1985(3) "requires an allegation of four elements: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy;

(4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Rhyce v. Martin*, 173 F. Supp. 2d 521, 532 (E.D. La. 2001) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652 (5th Cir. 1994); *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997)). Similarly, a general civil conspiracy claim, which would apply to Plaintiff's § 1983 claim, has the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010); *see also Salts v. Moore*, 107 F. Supp. 2d 732, (N.D. Miss. 2000) ("In order to prevail on a § 1983 conspiracy claim, a plaintiff must show: 1) the existence of a conspiracy that involves state action; and 2) the deprivation of civil rights in furtherance of a conspiracy by a party to the conspiracy.") (citing *Pfannstiel*, 918 F.2d at 1187; *Brown*, 870 F. Supp. at 160).

On the fourth element of § 1985(3) and the second and fourth elements of a civil conspiracy, as explained above per Plaintiff's own pleadings Reed was shot during the execution of a search warrant after officers saw him hold his arm out of a window with a gun and after Reed fired at least one shot at the officers. Thus, there was no deprivation of any right or privilege of citizenship of the United States for purposes of § 1985(3) and no unlawful object or unlawful act for purposes of a conspiracy to violate § 1983.

The first element of both § 1983 and § 1985(3) requires two or more persons joining in the conspiracy. However, under the single entity doctrine, individuals employed by the same entity are not considered separately from the entity or each other, such that the entity and individuals are not capable of conspiring among themselves. *See Martin*, 173 F. Supp. 2d at 532 (citing *Ferguson*, 30 F.3d at 653).

Further, a conspiracy is a meeting of the minds to accomplish an unlawful purpose and at least one conspirator taking an overt act to accomplish that purpose. Plaintiff has not alleged any facts to show that Hatfield, Suess, and Baskett had a meeting of the minds, with each other or with anyone else, to accomplish an unlawful act. Under § 1985(3), the unlawful purpose is necessarily the deprivation of civil rights. And in the context of this case the same is true of Plaintiff's civil conspiracy claim, which alleges that the officers conspired to violate § 1983. Plaintiff has not alleged any facts to show or even suggest that the officers reached an agreement among themselves to violate Reed's civil rights.

Plaintiff tries to show concerted actions through specious allegations that the officers lied after the shooting. Plaintiff bases this on purported differences between the events as recounted by the officers in their respective statements, such as the number of shots fired. Aside from the fact that any differences in the details of the officers' statements is due to the intense nature of the events, Plaintiff's allegations of after the fact conduct or statements does not support a conspiracy. Again, the unlawful purpose or object under both § 1985(3) and the civil conspiracy theory for violating § 1983 is the deprivation of Reed's civil rights. Of course, to have an agreement to accomplish an unlawful purpose, the agreement must be reached before the alleged unlawful purpose is fulfilled. *See Martin*, 173 F. Supp. 2d at 532 (stating that a § 1985(3) conspiracy requires an agreement for the purpose of and that causes the deprivation of a civil right); *Wackman*, 602 F.3d at 408 (civil conspiracy requires a meeting of the minds "on the object or course of action"). Otherwise, there could be no agreement or common objective to accomplish that purpose. *Cf. United States v. Perez,* 489 F.2d 51, 62 (5th Cir. 1973) ("[N]ot only must the objectives of all charged under one conspiracy be common, but there must be one objective, or set of objectives, or an overall objective to be achieved by multiple actions."). Further, liability for the conspiracy is

based on participation in the conspiracy that furthers the underlying unlawful purpose. *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 553 F. Supp. 2d 680, 695 (N.D. Tex. 2008). Conspiracies can and do end, including upon the accomplishment of the allegedly unlawful purpose[1], which here allegedly would be the shooting of Reed. Statements made after the accomplishment of the unlawful purpose would not amount to an agreement to accomplish the unlawful purpose or participation in a conspiracy that furthers the effort to accomplish that purpose.

Accordingly, Plaintiff has not alleged facts to support the elements of her conspiracy claims, and those claims should be dismissed.

### 2.     *Hatfield, Suess, and Baskett are entitled to Qualified Immunity*

In addition, Plaintiff's claims against Hatfield, Suess, and Baskett should be dismissed based on their qualified immunity. Although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of . . . immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). When the defense of qualified immunity is raised in a motion to dismiss, the complaint is subject to a heightened pleading requirement, which requires "claims of specific conduct and actions giving rise to a constitutional violation." *Cunningham v. City of Balch Springs*, No. 3:14-CV-59-L, 2015 U.S. Dist. LEXIS 80145 (N.D. Tex. June 19, 2015) (citing *Schultea v. Wood*, 47 F.3d 1427, 1432, 1434 (5th Cir. 1995) (en banc)).

Qualified immunity involves a two-step analysis: (1) whether the facts alleged by the plaintiff demonstrate a violation of a clearly established constitutional right and (2) whether the

---

[1] *Blumenthal v. United States*, 332, U.S. 539 (1947) (reviewing a trial court's instructions on the admissibility of statements made by an alleged co-conspirator "after a conspiracy has come to an end, either by the accomplishment of the common design or by the parties abandoning the same" and holding that the trial court's exclusion of such statements was proper because the statements are not admissible against other co-conspirators.)

defendant's conduct was objectively reasonable in light of the established right. *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). As set out above, even accepting that the right against excessive force is clearly established, Plaintiff has not alleged sufficient facts to show a violation of that right or that the officers conspired to violate that right.

In reviewing the second issue, a Court reviews the officer's entitlement to qualified immunity "in light of the facts and circumstances confronting [the officer], without regard to [the officer's] underlying intention or motivation." *Graham*, 490 U.S. at 396-97. This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). (internal quotations marks omitted). In applying this second portion of the analysis to an excessive force claim, an officer is entitled to qualified immunity unless the force complained of was clearly excessive and no reasonable officer would have acted in the same manner. *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)).

Plaintiff has not alleged facts that show that any of the officers' conduct was so clearly excessive that no reasonable officer would have acted as they did, or that any of the officers' conduct was pliantly incompetent or in knowing violation of the law. First, as noted above, Plaintiff has not alleged which officer actually shot Reed, and thus has not alleged facts to show any of the officers violated Reed's rights, let alone acted so contrary to Reed's rights as to over come qualified immunity. Similarly, Plaintiff has not alleged any facts to show that any of the officers had a meeting of the minds to accomplish some unlawful act together, let alone that prior to the execution of the warrant they engaged in acts that were plainly incompetent or in knowing violation of the law in an effort to accomplish the goal of violating Reed's rights.

Further, per Plaintiff's own allegations, Reed pointed a gun at the officers and shot at them at least one time. Each officer for whom this motion is filed recounted seeing an arm stick out of the window, with the arm holding a gun that was pointed at the officers, and having seen and/or heard the gun fire. Doc. #1, ¶¶48, 51-52. The recovery of the gun and the DNA confirm Reed was holding it and the GSR and the stovepipe jam confirm that Reed shot the gun. Under these facts, as perceived by the officers, it cannot be said that the officers are not entitled to qualified immunity. *Hollins*, 551 F.3d at 326 (qualified immunity protects all but the plainly incompetent or those who knowingly violate the law).

### III.   CONCLUSION

Plaintiff has failed to state a claim on which relief can be granted against Officers Hatfield, Baskett, and Suess, and has not alleged facts to overcome the qualified immunity of these officers.

Accordingly, Plaintiff's claims and the case as to Richard A. Hatfield, Jr., Fred L. Baskett and Christian Suess should be dismissed under Rule 12(b)(6).

Respectfully submitted,

*/s/ Roy L. Barrett*
Roy L. Barrett
State Bar No. 01814000
barrett@namanhowell.com
Joe Rivera
State Bar No. 24065981
jrivera@namahowell.com
NAMAN, HOWELL, SMITH & LEE, PLLC
400 Austin Avenue, Suite 800
P. O. Box 1470
Waco, Texas  76703-1470
(254) 755-4100
FAX (254) 754-6331

ATTORNEYS FOR DEFENDANT
THE CITY OF KILLEEN

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of this motion has been served on counsel for Plaintiff, Daryl K. Washington of Washington Law Firm, PC, 325 N. St. Paul St., Suite 3950, Dallas, Texas 76501 by certified mail, return receipt requested, and via the Court's ECF system, which generated notice of service on the 14th day of July 2020, on Plaintiff's counsel of record.

                                        */s/ Roy L. Barrett*
                                        Roy L. Barrett