IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DIANE REED BRIGHT, INDIVIDUALLY and as PERSONAL REPRESENTATIVE FOR THE ESTATE OF DECEDENT JAMES SCOTT REED<br><br>*Plaintiff,*<br><br>V.<br><br>THE CITY OF KILLEEN, TEXAS ANTHONY R. CUSTANCE, RICHARD A. HATFIELD, JR., FRED L. BASKETT, AND CHRISTIAN SUESS<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL CAUSE NO. 6:20-CV-431<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**DEFENDANT THE CITY OF KILLEEN, TEXAS'
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO RULE 12(b)(6)**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendant the City of Killeen, Texas, and makes and files this, its Reply in Support of its Motion to Dismiss under *Federal Rules of Civil Procedure Rule* 12(b)(6), and in support would respectfully show as follows:

### I.     SUMMARY OF THE REPLY

In her response to the City's motion to dismiss, Plaintiff Diane Reed Bright ("Bright") makes two basic points—(1) that allegations such as Killeen police officers "shoot first and ask questions later" is sufficient to allege a relevant official City policy and (2) by alleging that the City has a history of using no-knock warrants, including the warrant related to the Marvin Guy case, she has alleged a custom or practice. She is wrong on both points.



First, an "official policy" is a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the governmental entities lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *See Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). While acknowledging that the City has official, written policies, Plaintiff claims that the City's actual policy is to shoot first and ask questions later. Other than the incident at issue, Plaintiff offers no facts to support this allegation. Courts in the Fifth Circuit have regularly rejected conclusory accusations of a "shoot first ask questions later" policy[1], and they have also rejected reliance on the incident at issue to prove a policy. *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989); *Peterson*, 588 F.3d at 851 ("A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"). And while Plaintiff argues that the Marvin Guy case is an example of another improper use of a no-knock warrant by the City, the warrant in the Guy case was not improper. In fact, Guy filed a lawsuit in this Court, and that lawsuit was dismissed. See Cause No. 6:16-CV-00120.

Plaintiff also attempts to rely on the allegation that Officers Baskett, Hatfield, and Suess were not disciplined to support her claim. However, for the reasons stated in those officers' pending motion to dismiss, those officers did nothing for which they should have been disciplined. Alleging that the City failed to discipline an officer without pleading sufficiently that the officer did something for which discipline was appropriate, does not state a claim. Also, Plaintiff's own pleadings establish that the Texas Rangers were called in to do an independent investigation, that Custance's employment as an officer with the City ended, and that he was subjected to criminal charges. Moreover, a ratification theory such as that attempted by Plaintiff through her failure to

---

[1] *E.g., Edwards v. Oliver*, 2019 U.S. Dist. LEXIS 163238, at *23-27 No. 3:17-cv-01208-M-BT (N.D. Tex. 2019).

discipline allegations requires the pleading of facts to show that the municipality's decision makers knew that the basis for the officer's conduct was improper yet approved that conduct anyway. Plaintiff has not alleged facts to show such knowledge or decision by the City. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001).

Plaintiff also argues she has pled a custom or practice by alleging that the City has a history of use of improper no-knock warrants. However, the conclusory allegation that the City has such a history is insufficient to plead a custom or practice. The one prior incident of an alleged improper use of a no-knock warrant that Plaintiff does point to is the Marvin Guy case. Again, Plaintiff pleads no facts to establish that the no-knock warrant in the Guy case was constitutionally invalid or that the officers involved in that case used excessive force against Guy. In fact, Guy used excessive force when he killed a Killeen police officer. Even more telling as to the insufficiency of Brights' referral to the Guy case is that Guy filed his own lawsuit and it was dismissed by this Court. Also, a single prior violent incident is generally insufficient to establish a pattern, custom or practice. *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998). Further, a pattern of prior violations sufficient to establish a custom that reflects the governmental entity's policy "requires similarity and specificity: '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the *specific violation in question*." *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir.2005) (emphasis added)). As to the search aspect of the Guy case, Plaintiff has not alleged facts to show how that warrant was defective or how any deficiencies in that warrant pointed to the likelihood of deficiencies in future warrants. As for the use of force and the shooting of Reed, Plaintiff has not alleged facts to show that the Guy case, which involved a Killeen police officer being shot and killed by Guy, is similar to this case in which Reed, the suspect, was shot.

For all of these reasons, and those set out in the City's opening brief, Plaintiff's claims and case against the City should be dismissed.

## II. POINTS IN REPLY

### A. PLAINTIFF HAS NOT ALLEGED A RELEVANT OFFICIAL POLICY

Plaintiff responds that she has adequately alleged an official policy by alleging that the City's policy is to "shoot first and ask questions later." An "official policy" is a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the governmental entities lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *See Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Plaintiff acknowledges in her pleadings that the City does have official, written policies. She never alleges facts to show that a "shoot first ask questions later policy" can be found anywhere in the City's officially promulgated policies.

Plaintiff alleges that the City's policies are deficient due to the absence or inadequacy of policies. Plaintiff alleges that the City does not have a policy restricting or governing the use of no-knock warrants. The failure to adopt a policy can, in certain circumstances, give rise to a § 1983 claim for municipal liability. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 217 (5th Cir. 1998). However, that failure must be due to deliberate indifference, amounting to a conscious and intentional choice by the municipality's policymaker. *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 396 (5th Cir. 1992). Demonstrating deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. Deliberate indifference is generally shown through a pattern of prior violations similar to the current alleged violation and specific enough to point to the current violation. *Hicks-Fields*, 860 F.3d at 810 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Deliberate indifference is a "stringent standard" requiring "more than negligence or even

gross negligence." *Valle v. City of Hous.*, 613 F.3d 536, 542, 547 (5th Cir. 2010). (citation omitted). Plaintiff makes generalized and conclusory allegations that the City has a history of "persistent, widespread" improper uses of no-knock warrants. However, Plaintiff points to only one prior incident—the Marvin Guy warrant. A single event is not sufficient to show a pattern of conduct to support deliberate indifference. *Hobart v. Estrada,.* 582 F. App'x 348 (5th Cir. 2014); *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989). Further, the Guy case is not similar. Although Guy involved the use of a no knock warrant, an officer, not the suspect, was shot and killed. Guy filed a lawsuit, which was dismissed, and there has never been any ruling that Guy's search or seizure rights were violated to show the use of a no-knock warrant in the Guy incident is in any way a prior constitutional violation that could support deliberate indifference.

Moreover, no-knock warrants are not *per se* unconstitutional. *United States v. Cantu*, 230 F.3d 148, 152 (5th Cir. 2000); *Mason v. Lowndes Cty. Sheriff's Dep't.*, 106 F. App'x 203, 208 (5th Cir. 2004) (mem. op.). Thus, lack of a City policy prohibiting the use of no knock warrants outright is not a basis for *Monnell* liability. As for any allegation that the City failed to have a policy that adequately restricts or guides the use of no knock warrants, regardless of whatever policy or lack thereof the City has in that regard, it is clear from Plaintiff's own pleadings that the officers did in fact obtain a warrant from a magistrate and that warrant in question authorized entry on a no-knock basis, the search of Reed's duplex and seizure of Reed. For a city policy to be relevant to an alleged constitutional violation, the policy must have been the moving force behind the violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). If the officers sought a warrant and sought permission to execute that warrant on a no-knock basis, and the affidavit in support was constitutionally deficient, the judge that issued the warrant should have declined to issue it. *Williams v. Kaufman County*, 352 F.3d 994, 1008 (5th Cir. 2003) (the issuance of a warrant by a judicial intermediary establishes probable cause and breaks the chain of causation as to the search for which the warrant

was issued) *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004) (same). And while Plaintiff alleges that a former City councilman was concerned about the use of such warrants and cites to statistics about the misuse of such warrants, Plaintiff has not alleged facts to show a pattern of the City to unjustifiably or unconstitutionally seek or execute no-knock warrants.

Plaintiff argues in her response that it is contested as to whether Reed possessed a gun or pointed it at or fired at officers. For all of the reasons set out in the officers' motion to dismiss, there was no violation of Reed's rights by reason of the no-knock warrant, or otherwise, but even if there had been (which is denied), Reed's burden to support municipal liability is to show that a City policy in some way caused the violation.

Plaintiff also alleges that the City had a policy of failing to train officers, such as on when to obtain a no-knock warrant, how to execute a warrant, and on de-escalation techniques. In her response, Plaintiff states that "notably" the City does not even claim to have training policies. Plaintiff relies heavily on the Rule 12(b)(6) standard when it favors her, so she should be aware that a motion to dismiss is based on her pleadings, which do not detail the City's policies or training provided to its officers. The City absolutely has policies relevant to the use of force and execution of warrants and trains officers on those issues. The City's policies and training are more than constitutionally adequate.

Plaintiff argues that details about City policy on training, and the training provided to officers, are uniquely within the knowledge of the City and that she cannot be expected to plead the details of the policy and related training. Despite the district court cases on which Plaintiff relies, the Fifth Circuit has held that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . .cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Fraire v. Arlington*, 957 F.2d 1268, 1277-81 (5th Cir. 1992) (same). And the Supreme Court has held that "a plaintiff armed

with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-79. The point of the City's motion is not that Plaintiff must allege the details of the training policies and the deficiencies of those policies in exhaustive detail. The point is that under cases like *Spiller* and *Fraire*, a plaintiff must at least allege some factual detail to support an otherwise conclusory assertion that the City's policies are deficient. Even cases cited by Plaintiff in her response brief (in one of which her counsel was counsel of record) recognize this. *See Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 953 (N.D. Tex. 2014) (where plaintiffs pled no supporting facts as to their claim that the Dallas Police Department did not provide adequate training on the use of a taser, that claim was dismissed). While the content of City policy or the exact details of training might be uniquely within the City's knowledge, other violations substantially similar to the alleged violation of Reed's rights that would support the conclusion that the City's policies are deficient would be public knowledge. Yet Plaintiff does not point to any incident other than the single Marvin Guy incident where there was no finding that the City had a deficient training policy or deficiently trained the officers involved.

Finally, Plaintiff argues that the City's policy is shown by its ratification of the officers' conduct, in that Officers Suess, Baskett and Hatfield were not disciplined. In making this argument, Plaintiff cites the standard from *St. Louis v. Praprotnik*, 485 U.S. 112 (1988) and cases applying that standard, Plaintiff proceeds to make an argument divorced from that standard. As Plaintiff observes in her brief, in *Praprotnik*, the Court held when a policymaker approves an officer's conduct that violates a citizen's rights, as well as the basis for that conduct, there can be municipal liability. As set out in the officers' motion to dismiss, there was no violation by Officer Suess, Hatfield, or Baskett to approve. Moreover, the incident was subject to an independent investigation by the Texas Rangers, during which Officers Hatfield and Baskett provided statements to the Rangers, and in those statements Hatfield and Baskett explained that they fired

because they saw Reed produce a weapon and fire at Suess. Doc. #1, ¶¶34-36, 38-41. While Plaintiff disputes the officers' version of the events, "a municipality is not liable under the ratification theory where a [city] accepts [the] officers' version of events, so long as that version did not show that the deputies' actions were manifestly indefensible. *Allen v. City of Galveston, Tex.*, No. G-06-467, 2008 U.S. Dist. LEXIS 26251, 2008 WL 905905, at *8 (S.D. Tex. March 31, 2008) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986). Plaintiff has not alleged facts to show that the officers' version of the events is manifestly indefensible. If all a plaintiff had to do to support a ratification theory is dispute the officer's version of the events, municipal liability would become vicarious, which both the Supreme Court and the Fifth Circuit have rejected. *See Milam*, 113 Fed. Appx. at 627; *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir.1998) (quoting *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997)). And as noted in the original brief, far from providing blanket approval to the conduct of its officers, when the Rangers reported on Custance's conduct, a case was presented to the grand jury, he was indicted and pled guilty, was required to relinquish his Texas Peace Officer's license for life, and resigned from the Killeen PD. Doc. #1, ¶¶45, 61. Thus, the City does not give blanket approval when an officer engages in improper conduct. The Court should thus reject the Plaintiff's conclusory ratification claim.

**B.    PLAINTIFF HAS NOT ALLEGED A CUSTOM OR PRACTICE REGARDING USE OF EXCESSIVE FORCE OR DELIBERATE INDIFFERENCE**

Plaintiff argues that in the alternative, if she has not alleged a policy, her allegations of a "persistent, widespread" practice of officers following a "shoot first ask question later" policy is sufficient to support liability against the City. In support, Plaintiff cites *Brown v. City of Houston* and *Flanagan v. City of Dallas*. Plaintiff argues that in *Brown* the district court found that the plaintiff's allegations that a district attorney's office had a "do whatever it takes" conviction culture

supported the plaintiff's claim of a practice resulting in an alleged *Brady* violation. Far from holding that a plaintiff can survive a motion to dismiss with conclusory allegation, the *Brown* court noted that the county had acknowledged that the plaintiff had alleged a do whatever it takes culture and had given examples demonstrating that culture. 297 F. Supp. 3d at 766. In this case, the City denies the existence of any culture that contributed to any violation of Reed's rights and denies that Plaintiff has given any pertinent examples to demonstrate such culture. To the contrary, as shown elsewhere in the City's briefing (and in the briefing of Officers' Suess, Hatfield, and Baskett), the City has relevant policies, the City provides its officers with training, a no-knock search warrant was appropriately obtained from a judge, and the defendant officers were executing that warrant. Further, the pleadings reflect that when there is a shooting incident, the City has the Texas Rangers perform an independent investigation and when wrongdoing by an officer is discovered, appropriate action is taken.

Reed argues that in *Flanagan*, the district court held that citing to a "combination of statistics, past incidents, and statements by City officials" was sufficient to state a claim of *Monnell* liability. This description of *Flanagan* and attempt to make it apply to this case ignores the details of both cases and is a substantial over-generalization of what must be alleged to support municipal liability. In *Flanagan*, the court observed that the plaintiff alleged a "shoot first and ask questions later" policy at the City of Dallas police department, and that the plaintiff went on to allege substantial facts to support the existence of such a policy. At issue in *Flanagan* was an alleged use of excessive force involving the shooting of an unarmed African-American man. As for prior incidents, the plaintiff alleged that 60 unarmed African-American men had been killed by DPD officers in the prior 13 years, that there had been 12 other shootings of unarmed subjects in the same year of the shooting at issue, that 86 grand juries had been convened to investigate alleged misconduct by Dallas officers and that two indictments had been returned, and that there were 94

open internal affairs investigations pending regarding DPD officer-involved shootings. *Flanagan*, 48 F. Supp. 3d at 953. As for statistics, the plaintiff in *Flanagan* cited statistics <u>specific to the City of Dallas police department</u>, such as that Dallas is at the top of the list of police misconduct statistics in the South and that Dallas is ranked number 11 in police misconduct incidents. *Id.* And as for statements by city policymakers, the plaintiff alleged that a councilman had stated that the City's training of officers was deficient and resulted in the killing of an unarmed individual. *Id.*

While Plaintiff claims that her pleadings cover the same basic categories—prior incidents, statistics, and statements by city officials—her allegations are not in the realm of the level of detail used in *Flanagan*, and do not otherwise support *Monnell* liability. As for prior incidents, again, the only prior incident that Plaintiff points to is the Guy case, a single prior incident that did not involve the shooting of the suspect, where Guy's civil rights allegations were dismissed by this Court for failing to state a claim. As for statistics, Plaintiff cites general statistics regarding the use of no-knock warrants, but unlike *Flanagan* the statistics Plaintiff cites do not show how the alleged violations by the City of Killeen compare to other cities and are not otherwise specific to the City. And as for statements by a city official, Plaintiff cites none, not even one, that conceded a deficiency in a policy of the City of Killeen that caused an excessive force incident. Plaintiff alleges that a retired military Lt. Colonel who served on the City council years prior to Reed being shot expressed concern about the use of no-knock warrants and suggested that they should not be used. This is certainly not an official statement of the City and not a concession by the City that its policies, including on the use of and execution of no-knock warrants, are deficient or caused any violation of Reed's rights or the rights of anyone else. Plaintiff's statistics might show that no-knock warrants are dangerous, but that is not the issue. The issue is whether she has alleged facts to show a custom or practice at the City to violate rights in connection with such warrants, and she has not.

Plaintiff has not otherwise pled temporally related, sufficiently numerous and factually similar prior incidents which is required to show a custom or practice. *Piotrowski*, 237 F.3d at 581; *Pineda,* 291 F.3d at 329; *Peterson*, 588 F.3d at 851. Nor has she pled facts to show any relevant policy, custom, or practice at the City was implemented due to deliberate indifference, which also generally requires proof of a pattern of similar violations, putting the municipality on notice of the likelihood of similar future violations. *Connick*, 563 U.S. at 62-63. As noted in the City's opening brief, Plaintiff alleged an incident involving an Officer Micaire Morrisey, but that incident was an alleged sexual assault, not a no-knock warrant or a shooting, and occurred over 2 years prior to events regarding Reed. Plaintiff alleges an incident involving a former officer Benjamin Harp, but that incident involved a false report, not a no-knock warrant or shooting, and occurred *after* Reed was shot and thus could not have been part of a custom that caused Reed's shooting.

C. **PLAINTIFF HAS NOT ALLEGED FACTS TO SUPPORT CONSPIRACY LIABILITY**

In its opening motion, the City argued that an entity such as the City and its employees are regarded as a single entity for purposes of civil conspiracy and conspiracies under § 1985(3), and, therefore, Plaintiff cannot maintain either type of conspiracy claim against the City. *See Hampshire v. Port Arthur Indep. Sch. Dist.*, No. 1:06-CV-442-TH, 2007 U.S. Dist. LEXIS 116403, at *24 (E.D. Tex. 2007). Plaintiff has not in her response pointed to factual allegations or legal authority to show that she can overcome this single-entity rule. Also, in both her Response to the Motion to Dismiss filed by Defendant Custance (See Doc. 24 at p. 20) and her Response to the Motion to Dismiss of Defendants, Hatfield, Baskett and Suess (Doc. 25, at p. 14), Plaintiff confirms her conspiracy claims are against the officers in their individual capacities only and not as alleged conduct attributed to the City so as to impose liability on the City for an alleged conspiracy. As a result, any conspiracy claim against the City should be dismissed. *See Flanagan*, 48 F. Supp. 3d

at 953 (where no responsive argument was made on city's argument that a claim should be dismissed, the issue was waived and the claim was dismissed).

## III. CONCLUSION

Plaintiff has failed to state a claim on which relief can be granted against the City because Plaintiff has failed to allege a basis for governmental liability against the City and has failed to allege a constitutional violation by the officers of Reed's civil rights. Accordingly, Plaintiff's claims and the case as to the City should be dismissed under Rule 12(b)(6).

Respectfully submitted,

*/s/ Roy L. Barrett*
Roy L. Barrett
State Bar No. 01814000
barrett@namanhowell.com
Joe Rivera
State Bar No. 24065981
jrivera@namahowell.com
NAMAN, HOWELL, SMITH & LEE, PLLC
400 Austin Avenue, Suite 800
P. O. Box 1470
Waco, Texas 76703-1470
(254) 755-4100
FAX (254) 754-6331

ATTORNEYS FOR DEFENDANT
THE CITY OF KILLEEN, TEXAS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this Reply has been served on counsel for Plaintiff, Daryl K. Washington of Washington Law Firm, PC and on Charles Olson of Haley & Olson, Counsel for Defendant Anthony R. Custance, by email and via the Court's ECF system, which generated notice of service on the 6th day of August 2020.

*/s/ Roy L. Barrett*
Roy L. Barrett