**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **DIANE REED BRIGHT, INDIVIDUALLY and as PERSONAL REPRESENTATIVE FOR THE ESTATE OF DECEDENT JAMES SCOTT REED** | § | |
| ***Plaintiff,*** | § | |
| **V.** | § | **CIVIL CAUSE NO. 6:20-CV-431** |
| **THE CITY OF KILLEEN, TEXAS ANTHONY R. CUSTANCE, RICHARD A. HATFIELD, JR., FRED L. BASKETT, AND CHRISTIAN SUESS** | § | |
| ***Defendants.*** | § | |

**DEFENDANTS HATFIELD, BASKETT AND SUESS'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants Richard A. Hatfield, Jr., Fred L. Baskett, and Christian Suess (hereinafter "Movants" or "Officers") and make and file this, their Reply in Support of Their Motion to Dismiss under *Federal Rules of Civil Procedure Rule* 12(b)(6). In her reply, Plaintiff argues that her claims are broader than just alleged excessive force against Reed, but also include the use of an allegedly unconstitutional no-knock warrant and the seizure of Reed. For the reasons set forth below, Plaintiff has failed to state claims against the movants upon which relief can be granted.

## A. ALLEGATIONS REGARDING NO-KNOCK WARRANT DO NOT STATE A CLAIM AGAINST MOVANTS

As noted in the Officers' opening motion, a no-knock warrant is not *per se* unreasonable. *United States v. Cantu*, 230 F.3d 148, 152 (5th Cir. 2000); *Mason v. Lowndes Cty. Sheriff's Dep't.*,





106 F. App'x 203, 208 (5th Cir. 2004) (mem. op.). Thus, it was incumbent upon Plaintiff, as the party with the burden of proof, to allege facts to show that the use of a no-knock warrant was not justified.

Plaintiff makes generalized complaints that a no-knock warrant was not justified, but she pleads no facts to show that the warrant gives rise to any claim for Reed or her since she has not alleged facts to show it was constitutionally deficient. *Kohler v. Englade*, 470 F.3d 1104 & 1113 (5th Cir. 2006) (discussing *Franks* and *Malley* liability for warrant affidavit deficiencies). Nor does she tie the Officers to any deficiencies in the warrant for which they could be held individually responsible because she has not alleged facts to show that any of the Movants was involved in obtaining it.

Plaintiff's pleading acknowledges that the warrant authorized a no-knock entry and search of Reed's duplex. (Doc. #1, ¶17.) A warrant is presumptively valid. *Williams v. Kaufman County*, 352 F.3d 994, 1008 (5th Cir. 2003). The issuance of a warrant by a judicial intermediary establishes probable cause and breaks the chain of causation as to the search for which the warrant was issued. *Id.*; *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *cf. Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), overruled on other grounds by *Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc) ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate, . . . the intermediary's decision breaks the chain of causation" and insulates the officers.). So, as far as the officers' entry into and search of Reed's duplex, because they were acting according to a warrant their actions cannot be the cause of a violation of Reed's right against an unreasonable search. And Plaintiff has not alleged any facts to show that, with regard to the entry and search, the officers acted contrary to the warrant. *Estate of Davis v. City of N. Richland Hills*, No. 4:00-CV-438-Y, 2007 U.S. Dist. LEXIS 17648, at *19-20

(N.D. Tex., March 13, 2007) (noting plaintiff's arguments about deficiencies in warrant affidavit and noting the officer acted reasonably in believing probable cause existed and also noting that if the officer had a reasonable suspicion that the subject of the warrant was dangerous that justifies the no-knock entry and it is irrelevant whether the City's policy regarding using no-knock warrants is constitutional). Because the Movants were acting on a no-knock warrant that has not been challenged, their actions in executing the warrant on a no-knock basis cannot have caused any violation of Reed's rights by them.

As for the seizure of Reed, Plaintiff tries to argue that the officers' actions in surrounding the duplex and executing the warrant limited Reed's ability to move and constituted a seizure. But, again, any seizure effected by the mere execution of the warrant was based on the warrant, and thus the officers could not have caused any violation, as discussed above.

Also, to state a claim against any of the three Movants, Plaintiff must plead facts to show how each of them individually was involved in tainting the independent intermediary (or was in any way involved with the warrant being issued). *Shaw v. Villanueva*, 918 F.3d 414, 418 (5th Cir. 2019); *Sowell*, 761 Fed. Appx. at 304-05; *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005); *Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017); *Yeager v. Stroman*, 2020 W.L. 2615759*5 (W.D. Tex. 2020).

Plaintiff does not plead that any of the Movants prepared the warrant application, provided information for the warrant application, signed the warrant application, or presented the warrant application to the magistrate.

This failure requires dismissal as to the Movants related to the no-knock warrant. *Michalik, supra; Melton, supra. See also Hampton v. Oktibbeha County Sheriff's Dept., 480 F.3d 358, 365 (5th Cir. 2007).* The Fifth Circuit has stated that:

> We have made clear that liability under *Franks* only extends to the officer or officers who signed or presented the affidavit used to obtain the warrant and anyone who intentionally provided information for use in the affidavit.

*See Charlot v. City of Houston*, 757 Fed. Appx. 310, 614 n. 13 (5th Cir. 2018).

**B. PLAINTIFF'S ALLEGATIONS OF THE OFFICERS' PERSPECTIVE AND OF THE PHYSICAL EVIDENCE ESTABLISH THAT THEIR USE OF FORCE WAS NOT EXCESSIVE**

Plaintiff also argues that Movants' motion to dismiss mischaracterizes her allegations which is incorrect. Plaintiff chose to allege in her Complaint the officers' perspective of the events by referencing their statements made during the Ranger's investigation and to recite at length physical evidence from that investigation. Because this information is set out in the Complaint, it may be considered to show Movants perspective of the events. *Wilson v. Birnberg*, 569 Fed. Appx. 343, 349 n.1 (5th Cir. 2014) ("Generally, any documents that are referenced in the pleadings themselves may be considered [in a Rule 12(b)(6) motion].") (citation omitted).

Plaintiff argues that it is "understandable" that the officers would want the facts viewed from their perspective. It is not just understandable. It is the law. For over 30 years, a fundamental guiding principle of the analysis of an excessive force claim is that the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Graham v. Connor*, 490 U.S. 386, 396 (1989). By the accounts of the officers, as alleged in Plaintiff's pleading, Officers Hatfield, Suess, and Baskett each saw an arm reach out of the bedroom window that they had breached, each saw that the arm was holding a gun, and each saw and/or heard the gun fire. Doc. #1, ¶¶34-36, 38-41. Movants do not mischaracterize their statements nor claim that Plaintiff agrees with their statements. The point is that the Movants statements are recounted in the Complaint and thus may be properly considered, and they, along with the physical evidence also alleged in Plaintiff's complaint, show that from the officer's perspective, Reed presented an immediate danger justifying the use of

deadly force. *Ontiveros*, 564 F.3d at 382 ("An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others.").

Plaintiff attempts to undermine these basic facts by pointing to purported inconsistencies in the officers' statements, such as to the color of the gun and the number of shots. The details notwithstanding, all three officers recount seeing an arm with a gun come from the window they had breached and to have seen or heard the gun fire. Doc. #1, ¶¶34-36, 38-41. In fact, Plaintiff's allegation of the officers' statements show that the officers observed the gun pointed at Officer Suess and Officer Suess fall back after the shot. Doc. #1, ¶¶25, 34-35

Plaintiff also argues that the officers' statements are just one version of the events and that the Court cannot make a credibility assessment in ruling on a Rule 12(b)(6) motion. Movants are not asking the Court to make a credibility determination, but simply to review the facts as alleged in the Complaint from the Movants' perspective. Even when the subject is not armed, if an officer reasonably perceives a threat to himself or others, he may use deadly force. *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (The law "does not require the court to determine whether an officer was in actual, imminent danger of serious injury, but rather, whether 'the officer reasonably believe[d] that the suspect pose[d] a threat of serious harm to the officer or to others."); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 381-82 (5th Cir. 2009) (stating that "[a]n officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others" and concluding that deadly force was justified based on suspect's reaching motion); *Manis v. Lawson*, 585 F.3d 839 842 (5th Cir. 2009) (summary judgment to be granted in favor of officers where suspect reached under his seat).

Also, the officers' motion to dismiss is based not only on the facts they perceived, as reflected in their statements that are recounted in the Complaint, but also on the undisputed physical evidence also recited in the Complaint.

Plaintiff argues in her reply that while a sample was taken from Reed's hand, it is not clear that a gun shot residue analysis was performed on him to show he shot a gun. However, what is clear from Plaintiff's allegations on the testing that was done is that a GSR analysis was performed on Suess and the sample taken from his *face* was positive for GSR, consistent with him standing near the window when Reed fired. Doc. #1, ¶52. Plaintiff argues that the GSR could have come from other gun shots, including Suess shooting earlier in the day, with no allegations to support such speculation as to the source of the GSR or factual basis to ignore the obvious source—Reed shooting a gun in Suess's face. *Twombly*, 550 U.S. at 555 (speculative allegations are insufficient).

Plaintiff argues that no shell casing for the .380 pistol was recovered. This is not true. A spent shell case was found lodged in the .380 pistol. Doc. #1, ¶47. According to Plaintiff's own allegations, a stovepipe jam occurs when "the cartridge that was *just fired* did not get ejected from the firearm properly." Doc. #1, ¶48 (emphasis added). Plaintiff argues that Reed was a new gun owner, and the cartridge could have been from some time before the execution of the warrant. A stovepipe jam is not an issue requiring a gunsmith or in-depth knowledge of firearms to remedy. As Plaintiff herself described, such a jam is simply when the spent casing gets caught in the ejection port. Doc. #1, ¶48. Yet Plaintiff would have the Court speculate and indulge the inference that Reed, a man who purportedly purchased the gun out of fear for his own safety, simply left the jam in the gun when only the slightest manipulation of the slide would have cleared the jam. Again, the Court is not required to accept speculative allegations or unreasonable conclusions since they do not constitute sufficient pleadings of fact. *E.g., Harris v. Ashby*, No. 3:00-CV-1409-M, 2001

U.S. Dist. LEXIS 12113, at *15-16 (N.D. Tex. 2001) (See 5A Wright & Miller, § 1357 at 311-18(for purposes of 12(b)(6), a court need not accept as true "unsupported conclusions," "unwarranted inferences," or "unwarranted deductions").

Plaintiff also argues that, contrary to the officers' motion to dismiss, she alleges that the .380 was recovered from beside Reed's body, not near the window. This only further supports the officers' statements—the officers all recounted seeing a firearm come from the window and fire, which is consistent with the GSR found on Officer Suess's face. Also, Reed's DNA being found on the .380 is consistent with him holding the gun when he died, as is the fact that the .380 was found beside his body. Plaintiff's speculative allegation that Reed did not have his gun or fire it when the warrant was executed is thus inconsistent with the physical evidence Plaintiff has alleged.

As a result, based on Movants perspective of the events, supported by the physical evidence, all as stated in the Complaint, Plaintiff has not alleged that the force used was excessive and certainly not alleged that such force was so excessive as to deny Movants qualified immunity.

### C. ALLEGATIONS THAT MOVANTS COLLECTIVELY VIOLATED REED FOURTH AMENDMENT RIGHTS DOES NOT STATE A CLAIM

The essential elements of a Fourth Amendment claim are: (1) use of force that was clearly excessive to the need; (2) the excessiveness of the force was objectively unreasonable; and (3) injury resulting from the use of force. *See Petta v. Rivera*, 143 F.3d 895, 908 & n.15 (5th Cir. 1998) (discussing the effect of *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992) on Fifth Circuit precedent on the elements of a Fourth Amendment claim).

Plaintiff has not alleged that Officer Suess fired at Reed or used any force against Reed. And Plaintiff has not alleged facts to show that Hatfield, Baskett or Suess used any force that caused Reed injury. Reed was struck by a single bullet. Plaintiff cannot state a claim against multiple defendants by lumping them together. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.

1999); *Mendoza v. J.P. Morgan Mortg. N.A.*, No. 7:17-CV-180, 2017 U.S. Dist. LEXIS 98990, at *9 (N.D. Tex. 2017). Section 1983 requires personal involvement in causing the constitutional injury. That is, an officer can only be liable for his own individual actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). An excessive force claim also requires an injury which resulted directly and only from a use of force by the officer that was clearly excessive. *Williams v. Bramer*, supra. Since Plaintiff has not alleged who fired the one shot that hit Reed, she has not alleged an adequate excessive force claim against any of the Movants even if the force was excessive, which it was not for the reasons above stated.

Plaintiff cites *Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1995) and *Young v. Green,* No. H-11-1592, 2012 U.S. Dist. LEXIS 115027 (S.D. Tex. August 15, 2012). Neither case involves a shooting of a suspect by an officer. Rather, both cases involved traffic stops. In *Petta,* a police officer performed a traffic stop of a mother, who had her children with her and ordered the mother to exit the vehicle. The mother refused, the officer pointed a gun at her, and the mother fled and during the pursuit the officer shot at the vehicle. *Petta*, 143 F.3d at 897-98. At issue in the opinion was the children's claim of excessive force. *Id.* at 900. Contrary to Plaintiff's argument that *Petta* supports her Fourth Amendment claim, the Fifth Circuit in *Petta* found that to the extent that the officer's conduct affected the children, they had a Fourteenth Amendment substantive due process claim, rather than a Fourth Amendment claim. *Id.* at 900-03. Plaintiff has not alleged a substantive due process claim.

*Young v. Green* is even less applicable. In *Young* one of the plaintiffs was in a crowded store with family members and claimed that while trying to exit the store an officer struck him. 2012 U.S. Dist. LEXIS 115027, at *3. The family members that witnessed the incident claimed that they had experienced mental distress in witnessing the use of force. *Id.* at *4. In support of

their claim, the family-member plaintiffs cited *Petta.* The district court noted that in *Petta,* the children had a claim (again, a substantive due process claim and not a Fourth Amendment claim) because they had "experienced themselves" the officer's actions—his screaming, banging on the car, shooting at the car, breaking windows and similar acts. *Id.* at *13. Unlike this description of events in *Petta*, Plaintiff has not alleged any acts of force specific to Hatfield, Baskett or Suess that Reed experienced. Further, the court in *Young* rejected the plaintiff's reliance on *Petta*, holding that merely witnessing a use of force does not give rise to a cause of action. *Id.*

If Plaintiff wanted to state a claim of use of excessive force against Officers Hatfield, Baskett or Suess, her burden was to plead facts to show how each officer used excessive force and how that force caused Reed injury. She has not done so, and thus her claim of excessive force must be dismissed. Further, the circumstances as reflected by Plaintiff's pleadings show that the actions of Movants were not so plainly incompetent or in knowing violation of the law as to overcome their qualified immunity. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)

### D. The Officer's Did not Engage in a Conspiracy

As pointed out by Movants in their opening motion, under the single entity doctrine, individuals employed by the same entity are not considered separately from the entity or each other, such that the entity and individuals are not capable of conspiring among themselves. *See Martin*, 173 F. Supp. 2d at 532 (citing *Ferguson*, 30 F.3d at 653). Plaintiff responds that she has sued the officers individually, rather than in their official capacity. The officers in the cases cited by Movants in their original motion were also sued individually. *See Martin*, 173 F. Supp. 2d at 526 (noting suit was against Movants individually and in their official capacity). Courts have specifically held, including in the context of Section 1983 claims, that suing officers in their individual capacity does not prevent application of the single-entity doctrine. *See Angelle v. Town*

*of Duson*, No. 6:18-cv-00272, 2018 U.S. Dist. LEXIS 167233, at *23-24 (W.D. La. 2018) (finding that officers of a police department constituted a single entity incapable of conspiring with itself and collecting Fifth Circuit authorities and noting that "[e]ven when the defendants are sued in their individual capacities, as the Defendants in this case, the premise is still true"); *see also Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (citing *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir.1952)); *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004) (dismissing § 1983 conspiracy claims brought against two police officers from the same police department in their individual capacities under the intra-corporate conspiracy doctrine).

Moreover, what Plaintiff alleges is simply not a conspiracy. First, even the allegations highlighted by Plaintiff in her response are conclusory and speculative. Plaintiff relies heavily on labels like "cover up" and accusations that the officers fabricated their story or lied, but does not offer any concrete facts to show that Movants or others came to an agreement to engage in a violation of the law. Plaintiff notes that days passed between the shooting and the Movants' statements, but her claim that this gave officers time to develop a cover story is at best speculation. *Twombly*, 550 U.S. at 555 (speculative allegations are insufficient).

Second, the essence of conspiracy is "the combination of minds in an unlawful purpose." *Smith v. United States*, 568 U.S. 106, 111 (2013). As argued in the officers' opening motion, to have an agreement to accomplish an unlawful purpose, the agreement must be reached before the alleged unlawful purpose is fulfilled. *See Martin*, 173 F. Supp. 2d at 532 (stating that a § 1985(3) conspiracy requires an agreement for the purpose of and that causes the deprivation of a civil right); *Wackman*, 602 F.3d at 408 (civil conspiracy requires a meeting of the minds "on the object or course of action"). Otherwise, there could be no agreement or common objective to accomplish that purpose. *Cf. United States v. Perez,* 489 F.2d 51, 62 (5th Cir. 1973) ("[N]ot only must the

objectives of all charged under one conspiracy be common, but there must be one objective, or set of objectives, or an overall objective to be achieved by multiple actions."). Plaintiff's allegations however are that *after* the execution of the warrant and *after* Reed was shot, the Officers engaged in a cover up. (Doc. #25, p.15 ("There can be no doubt, then that Bright alleges that after wrongfully killing Reed during the unconstitutional no-knock no-announce raid, the defendant officers and Custance had a meeting of the minds to unify a story for the purpose of preventing Bright from brining a successful claim . . . ."). The search, seizure and shooting of Reed are the civil rights violations alleged in this case, and Plaintiff has not alleged an agreement to accomplish those violations made before they occurred, thus there could be no conspiracy to accomplish them. And to the extent Plaintiff tries in her response to stretch her theory to allege that the officers conspired to deprive her of the ability to file suit, Plaintiff has not alleged such a violation in her Complaint and has certainly not alleged facts to show that the Movants had a pre-events meeting of the minds to deprive Plaintiff, a person uninvolved in the events and of which the officers were completely unaware, of her rights, nor pointed to legal authority to support such a claim.

### E. FACTS ALLEGED IN COMPLAINT SHOW MOVANTS ARE ENTITLED TO QUALIFIED IMMUNITY

For the reasons stated in Movants' original Motion, and in this Reply, each of the three Movant officers, Hatfield, Baskett and Seuss, are entitled to dismissal because Plaintiff's alleged facts do not overcome their qualified immunity but instead show they are entitled to such immunity.

## II. CONCLUSION

For all of the foregoing reasons, and those more fully set out in Movants opening motion, Plaintiff's claims against Richard A. Hatfield, Jr., Fred L. Baskett and Christian Suess should be dismissed under Rule 12(b)(6).

Respectfully submitted,

*/s/ Roy L. Barrett*

Roy L. Barrett
State Bar No. 01814000
barrett@namanhowell.com
Joe Rivera
State Bar No. 24065981
jrivera@namahowell.com
NAMAN, HOWELL, SMITH & LEE, PLLC
400 Austin Avenue, Suite 800
P. O. Box 1470
Waco, Texas 76703-1470
(254) 755-4100
FAX (254) 754-6331

ATTORNEYS FOR DEFENDANT
THE CITY OF KILLEEN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this Reply has been served on counsel for Plaintiff, Daryl K. Washington of Washington Law Firm, PC and on Charles Olson of Haley & Olson, Counsel for Defendant Anthony R. Custance, by email and via the Court's ECF system, which generated notice of service on the 6th day of August 2020.

*/s/ Roy L. Barrett*
Roy L. Barrett