**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

**DIANE REED BRIGHT, INDIVIDUALLY, and as the PERSONAL REPRESENTATIVE FOR THE ESTATE OF DECEDENT, JAMES SCOTT REED**

***Plaintiff,***

**v.**

**THE CITY OF KILLEEN, TEXAS; ANTHONY R. CUSTANCE; RICHARD A. HATFIELD, JR.; FRED L. BASKETT; and CHRISTIAN SUESS**

***Defendants.***

§ § § § § § § § § § § § § § § § § §

**CIVIL NO. 6:20-CV-431**

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPAINT**

Before the Court is Defendant the City of Killeen's Motion to Dismiss Plaintiff's Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot., ECF No. 21. Plaintiff filed her Response on July 29, 2020. Pl.'s Resp., ECF No. 26. Defendant filed its Reply on August 7, 2020. Def.'s Reply, ECF No. 34. Plaintiff filed her Sur-Reply on August 13, 2020. Pl.'s Sur-Reply, ECF No. 38. The Court, having considered the Motion and the applicable law, finds that the Motion should be **DENIED WITHOUT PREJUDICE** in part and **GRANTED** in part as discussed below.

## I. BACKGROUND

### A. Factual Background

This Title 42 U.S.C. § 1983 claim arises from the death of James Scott Reed during the execution of a no-knock arrest warrant by The City of Killeen Police Department. The warrant was executed the morning of February 27, 2019 on belief that Reed was involved in a narcotics

operation. Pl.'s Compl., ECF No. 1 at ¶ 17–18. The KPD's Swat Team that executed the warrant consisted of three units—a window team, a breaching team, and an entry team. *Id*. at ¶ 20. The window team consisted of six officers: Officers Hatfield and Suess as lethal coverage; Officer Baskett as shield barrier; and three additional officers not named in the complaint. *Id*. In addition, Plaintiff alleges that, prior to execution of the warrant, Officer Custance—assigned to the entry team—abandoned post and positioned himself near the window team on the northside of the home. *Id* at ¶ 36.

During execution of the warrant, Officer Swan—assigned to the window team—broke the master bedroom window where Reed was sleeping and detonated a Flash Noise Diversionary Device. *Id*. at ¶ 22. The events following detonation are contested by the parties. Defendant alleges that Reed held his hand out the window and fired upon the window team. *Id*. at ¶ 25. Plaintiff alleges that the KPD broke the bedroom window and immediately began firing on Reed without announcement and without provocation. *Id*. at ¶ 27. Amidst the commotion, Reed was struck by a single bullet and died on the scene. *Id*. at ¶ 22. A follow up investigation conducted by the Texas Rangers concluded twenty-one shots were fired by three different members of the KPD—Officers Hatfield and Baskett, both admitted to firing upon Reed; and Officer Custance, who denied firing upon Reed. *Id*. at ¶ 23–24, 46.

Plaintiff initiated this Title 42 U.S.C. § 1983 municipal liability claim alleging, among other things, the Killeen Police Department failed to train officers on the proper use of deadly force during the execution of a no-knock arrest warrant, and the Killeen Police Department adopted a "shoot first and ask questions later" policy or custom. *Id*. at ¶ 87, 90.

**B. Procedural Background**

Plaintiff filed her Complaint in this Court on May 27, 2020 and named the City of Killeen, Officers Custance, Hatfield, Baskett, and Suess as defendants. ECF No. 1. On July 24, 2020, Defendant, the City of Killeen, filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 21. On July 27, 2020, Plaintiff filed her Response in Opposition to Defendant's Motion (ECF No. 25), and Defendant filed a timely reply. ECF No. 34. On August 13, 2020, with leave of court, Plaintiff filed a timely Sur-Reply. ECF No. 38.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the nonmovant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court need not blindly accept each and every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as a factual conclusion." *Taylor v. Brooks A. Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 56 U.S. 652, 678 (2009).

To survive the motion to dismiss, a nonmovant must plead enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. The court determines whether the plaintiff has stated both a legally cognizable and plausible claim; the court should not evaluate the plaintiff's likelihood of success. *Lone Star Fund V. (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Based upon the assumption that all the allegations in the

complaint are true, the factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

When the nonmovant pleads factual content that allows the court to reasonably infer that the movant is liable for the alleged misconduct, then the claim is plausible on its face. *Iqbal,* 556 U.S. at 678. The plausibility standard, unlike the "probability requirement," requires more than a sheer possibility that a defendant acted unlawfully. *Id.* The pleading standard announced in Rule 8(a)(2) does not require detailed factual allegations but demands greater specificity than an unadorned "the-defendant-unlawfully-harmed-me accusation." FED. R. CIV. P. 8(a)(2); *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Nor does a complaint comply with the standard if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. Evaluating the plausibility of a claim is a context-specific process that requires a court to draw on its experience and common sense. *Iqbal*, 556 U.S. at 663–64.

## B. Section 1983 Municipal Liability Claims

### 1. Official Custom or Policy

It has been long recognized that municipalities are not immune from § 1983 liability and are susceptible to direct claims for monetary, injunctive, or declaratory relief by plaintiffs alleging a deprivation of constitutionally protected rights. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690–91 (1978). However, a plaintiff may not bring a *Monell* claim based on a theory of *respondeat superior*. *Id.* Rather, a plaintiff must attribute the alleged constitutional deprivation directly to the municipality by demonstrating (1) an official policy or custom; of which (2) a policy maker can be charged with actual or

constructive knowledge; and (3) the custom or policy was the "moving force" behind the alleged constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

To the first prong, the plaintiff must demonstrate an official policy in one of two forms:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*per curiam*). Demonstrating the existence of an official policy through de facto custom or practice requires the plaintiff to allege facts demonstrating a "pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582. This is simply because "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy." *Id*.

To the second prong, the plaintiff must demonstrate actual or constructive knowledge of the official policy within "the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority." *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (internal quotation marks omitted) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). "A municipal policymaker is someone who has the responsibility for making law or setting policy in any given area of a local government's business. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (internal quotation marks omitted) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). Further, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). State and local law

determines whether a municipal official possesses final policymaking authority. *Valle*, 613 F.3d at 542.

To the third prong, the plaintiff must demonstrate the municipal policy was the "moving force" behind the alleged injury. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). The plaintiff demonstrates "moving force" by alleging facts showing that "municipal action was taken with the requisite degree of culpability," and a "direct causal link between the municipal action and the deprivation of federal rights." *Id*. The culpability required is "deliberate indifference." *Id*. at 405. "Deliberate indifference is a high standard—a showing of simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542 (internal quotation marks omitted) (quoting *Piotrowski*, 237 F.3d at 579.) Rather, the plaintiff must demonstrate the municipal decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 520 U.S. at 411.

**2. Failure to Train**

*Monell* liability has been extended to include liability for the failure to train employees. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 380 (1989). "The standard applicable to a failure-to-train claim is the same as the standard for municipal liability." *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). However, a failure to train claim focuses on "the adequacy of the training program in relation to the tasks the particular officers must perform." *Id*. (internal quotation marks omitted) (quoting *Harris*, 489 U.S. at 390). To succeed on a failure-to-train claim, the plaintiff must demonstrate (1) the training policy or procedure was inadequate; (2) the inadequacy of the training policy was a "moving force" in causing the alleged violation; and (3) the municipality was deliberately indifferent in adopting the training policy." *Valle*, 613 F.3d at 544.

For the training program to be the "moving force" of the alleged violation, "the identified deficiency in the training program must be closely related to the ultimate injury." *Harris*, 489 U.S. at 392.

Further, the identified deficiency must constitute a "deliberate indifference to the constitutional rights of its inhabitants." *Harris*, 489 U.S. at 392. Deliberate indifference requires the plaintiff to demonstrate "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymaker of the city can reasonable be said to have been deliberately indifferent to the need." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (internal quotation marks omitted) (quoting *Harris*, 489 U.S. at 390).

## III. ANALYSIS

Plaintiff asserts that the City of Killeen and the Killeen Police Department, through the Killeen City Council and Chief Kimble, implemented four inadequate training policies that led to the deprivation of Reed's constitutional rights. ECF No. 1 at ¶ 85. Specifically, the Plaintiff alleges that the City of Killen failed to implement and train officers on the proper procedures to follow during the execution of a no-knock warrant, the proper use of excessive force, the proper use of less deadly means, and the proper use of de-escalation techniques. *Id.* The Plaintiff further alleges that the City of Killeen adopted a de facto "shoot first and ask questions later" custom or policy. *Id.* at ¶ 63. The Court will analyze each claim in turn.

### A. Failure to Train

To support a failure-to-train claim, the plaintiff must first identify an official policy or procedure that is inadequate. *Valle*, 613 F.3d at 544. Plaintiff alleges the following training policies are inadequate: (1) the use of proper procedures during the execution of a no-knock

warrant; (2) the use of excessive and/or deadly force; (3) the proper use of less deadly means; and (4) proper de-escalation techniques. ECF No. 1 at ¶ 85. The City of Killeen asserts that the claim must be dismissed because the Plaintiff's allegations are conclusory and fail to allege any specificity to the inadequacy of current training policy. ECF No. 24 at 5. In response, the Plaintiff asserts that the specificity required is uniquely within the knowledge and control of the Defendant and thus cannot be alleged prior to discovery. ECF No. 25 at 6.

The Fifth Circuit explained a plaintiff cannot plead facts "peculiarly within the knowledge of defendants." *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). In *Morgan v. Hubert* the Fifth Circuit discussed the competing policy interests of qualified immunity and a Plaintiff's right to recovery and held a district court may tailor discovery as necessary to permit the plaintiff a legitimate claim to relief, while maintaining the government's right to preclusion from frivolous claims. *See* 335 F. App'x 466, 472–73 (5th Cir. 2009). As noted by our sister court in *Thomas v. City of Galveston*, in the context of municipal liability, like that of qualified immunity, it is "exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011). Just as in *Morgan*, and as noted by our sister court in *Thomas*, the Plaintiff here cannot plead with specificity the inadequacy of the Killeen Police Department's training programs because those facts are "peculiarly within the knowledge of [the] [D]efendant." *Schultea*, 47 F.3d at 1434.

The Plaintiff will be granted limited discovery concerning the policies and procedures identified by the Plaintiff as being inadequate, and as this Court deems necessary. This includes: (1) the Killeen Police Department's training policy and procedures on execution of no-knock arrest warrants; (2) the Killeen Police Department's training policy and procedures on the use of

deadly force; (3) the Killeen Police Department's training policy and procedures on the use of de-escalation techniques when conducting no-knock arrest warrants; and (4) the Killeen Police Department's implementation of the above policies within the police department for the five-years preceding the alleged violation.

The Defendant's Motion to Dismiss in relation to the Plaintiff's failure-to-train claim is DENIED WITHOUT PREJUDICE. Further, the Plaintiff will be permitted limited discovery as outlined above.

**B. De-Facto Custom or Practice**

The Plaintiff alleges that the Killeen Police Department adopted a de-facto "shoot first and ask questions later" custom or practice. ECF No. 1 at ¶ 63. The City of Killen asserts that the Plaintiff's claim for municipal liability based on a de-facto custom or practice must be dismissed because the Plaintiff failed to allege "a pattern of prior, similar incidents to show a custom or practice." ECF No. 24 at 8. To establish a de-facto custom or practice, the plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582. Plaintiff directs the Court to ¶ 92–93 of her Original Complaint to support a pattern of abuses. ECF No. 25 at 11. However, Plaintiff doesn't make a single allegation that demonstrates a pattern of abuse that would lead this Court to plausibly infer the City of Killen adopted a de-facto "shoot first and ask questions later" custom or practice. Thus, the Plaintiff fails to carry her burden to state a claim to relief that is plausible on its face.

The City of Killeen's Motion to Dismiss Plaintiff's claim as it relates to the adoption of a de-facto "shoot first ask questions later" custom or practice is **GRANTED**.

## IV. CONCLUSION

For of the reasons stated above, the City of Killen's Motion to Dismiss Plaintiff's Complaint is **GRANTED** in part and **DENIED WITHOUT PREJUDICE** in part. The Court will allow the Plaintiff limited discovery as outlined above.

SIGNED this 31st day of March, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE