IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **DIANE REED BRIGHT,** § | | |
| **INDIVIDUALLY, and as the** § | | |
| **PERSONAL REPRESENTATIVE** § | | |
| **FOR THE ESTATE OF THE** § | | |
| **DECEDENT, JAMES SCOTT REED** § | | |
| *Plaintiff,* § | | |
| § | | |
| *v.* § | 6:20-CV-000431-ADA-JCM | |
| § | | |
| **THE CITY OF KILLEEN, TEXAS;** § | | |
| **ANTHONY R. CUSTANCE;** § | | |
| **RICHARD A. HATFIELD, JR.;** § | | |
| **FRED L. BASKETT; and** § | | |
| **CHRISTIAN SUESS,** § | | |
| *Defendant*. § | | |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT CUSTANCE'S MOTION TO DISMISS

Before the Court is Defendant Custance's Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6), which was filed on July 7, 2020. Def.'s Mot., ECF No. 20. Plaintiff filed her Response on July 24, 2020. Pl.'s Resp., ECF No. 24. Custance filed his Reply on July 30, 2020. Def.'s Reply, ECF No. 27. Plaintiff filed her Sur-Reply on July 24, 2020. Pl.'s Sur-Reply, ECF No. 33. The Court has considered the Motion, all relevant filings, and the applicable law. For the reasons set forth below, the Court finds that the Defendant Custance's Motion to Dismiss hould be **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

**A. Procedural Background**

Plaintiff Diane Reed Bright, mother of the decedent, brings this claim as the Personal Representative for the estate of James Scott Reed, the decedent. Pl.'s Compl., ECF No. 1 at 116. Had the decedent survived, he would have this right of action for wrongful conduct against the

Defendants. *Id.* at 118. Plaintiff brings this claim against The City of Killeen, Texas, and Killeen Police Department (KPD) SWAT Officers Anthony R. Custance, Richard A. Hatfield, Jr. Fred L. Baskett, Christian Suess. *Id.* at 1. Specially Plaintiff alleges Defendant Custance's actions violated Reed's constitutional rights pursuant to the Fourth Amendment. *Id.* at 76. Furthermore, Plaintiff alleges that Defendants' Custance, Hatfield, Baskett, and Suess conspired to deprive Reed of equal protection of the law pursuant to 42 U.S.C. § 1985(3). *Id.* at 105. Lastly, Plaintiff alleges that all the defendants conspired to deprive Reed of his constitutional rights pursuant to 42 U.S.C. § 1983. *Id.* at 110.

**B. Factual Background**

On February 27, 2019, around 6:00 a.m., eighteen KPD SWAT officers, including Defendant Custance, executed a no-knock narcotics warrant at Reed's apartment in Killeen, Texas. ECF No. 1 at 17. At the no-knock narcotics search warrant's execution, an officer set a charge at the front door. *Id.* at 21. A window team officer used a window breaking tool to break Reed's bedroom window and initiate a Flash Noise Diversion Device. *Id.* Officers fired numerous shots and consequently pronounced Reed dead on the scene from gunshot wounds. *Id.* at 22. The autopsy report showed that Reed suffered traumatic injuries to his vital organs from a single bullet entering under his right armpit, traveling through both lungs, and severing his aorta. *Id.*

After the raid, KPD determined who shot at Reed based upon the officers' own admissions or denials during brief interviews. *Id.* at 23. During his interview, Custance denied shooting his firearm at Reed. *Id.*

At the request of the KPD, the Texas Ranger Department performed an investigation at approximately 8:00 a.m. on the day of the shooting. *Id.* at 24. Ranger Adam Russell was the lead

investigator assisted by Rangers Justin Duck and Randy Lewis. *Id.* KPD Sergeant Wilts told Ranger Russell that KPD SWAT officers killed Reed after Reed produced a handgun and opened fire on the officers. *Id.* at 25. The Sergeant told Russell that KPD SWAT members Hatfield and Baskett shot at Reed. *Id.*

Ranger Duck conducted an in-custody recorded interview with Eva Marie Brocks, who was in the bedroom with Reed during the police raid. *Id.* at 26. During this interview directly following Reed's death, Brocks stated she did not see whether Reed shot at the officers or not. *Id.* In this interview, Brocks also stated that someone shot at Reed's apartment two weeks before the raid, so he had obtained a small grey gun and a shotgun. *Id.* In a written statement outside the scene of the police raid, Brocks confirmed that she believed Reed had not fired any shots. *Id.* at 27. Brocks also indicated in this written statement that she did not believe Reed would have been able to fire any shots because of how fast the unannounced shooting commenced. *Id.*

During his initial walkthrough, Ranger Russell determined that there was likely a third KPD SWAT officer who shot at Reed based on his observation of ten bullet defects under the bathroom window. *Id.* at 28. Russell determined that whomever shot these ten bullets was shooting from outside into the residence based on a "bullet wipe." *Id*. A bullet wipe is the dark area around the margins of a bullet hole caused by the bullet lubricant, lead, or other possible material used to identify an entry site of a bullet. *Id.* Russel found that the defects' angle seemed to track towards the west side broken window of Reed's master bedroom. *Id*. During his investigation, Ranger Duck marked fired cartridges behind the Reed residence on the north side. *Id.* at 30. The Rangers associated the ten defects that Russell found during his initial walkthrough with these cartridges. *Id.* After examining of the cartridges, Russell determined they were the same manufacture and caliber issued to the KPD SWAT team. *Id.*

Russell then informed the KPD Sergeants Manges and Wilts that a third KPS SWAT member had shot at Reed and was covering it up. *Id.* The Sergeants recalled the KPD SWAT team for a meeting with Russell at 6:30 p.m. on the day of the police raid. *Id.* at 31. Russell relayed the evidence at the scene to the entire raid team, which showed that a third KPD SWAT member had shot at Reed a minimum of ten times. *Id.* During the meeting, Custance admitted he did shoot at the back of the Reed residence. *Id.* at 32. He alleged that he began shooting when he saw muzzle flashes and heard gunfire. *Id.* At this time, Russell took possession of and inspected Custance's rifle, an HK-416D assault rifle. *Id.*

The Defendants each had five to seven days before being required to give written statements. *Id.* at 33. Allegedly a small gray .380 Cobra pistol was found near the right hand of Reed's body. *Id.* When asked, the Defendants stated that the initial gunfire was from Reed using a small arms pistol or handgun. *Id.* Officer Hatfield alleges he heard a pop from a handgun in the direction of Reed's window and that he saw a right hand and arm holding a handgun coming out of the bedroom window pointed at Officers Baskett and Suess. *Id.* at 34. Officer Baskett and Suess both claim they observed a black arm holding a handgun out of the bedroom window. *Id.* at 39–40. Officer Swan, a member of the window team, did not claim to see Reed's hand or arm come out of the window shooting from a handgun. However, Swan did state that he heard several gunshots "go off at the window." *Id.* at 42.

During the raid, Custance's role was "to watch for any movement dangers that may have presented themselves that would disrupt the operations" at the northeast corner of the house. *Id.* at 36. After hearing shots and 'shots fired' over the radio, Custance moved to the north side of the property, approximately thirty to forty feet away from the house, a position not assigned to him. *Id.* Custance alleges he saw a muzzle flash and suspected it was from someone inside the

room shooting towards the window team. *Id.* at 37. He then fired several rounds of his rifle in the direction he allegedly saw the muzzle flashes coming from. *Id.*

The Ranger investigation revealed that by the end of April 2019, Custance had resigned from the KPD. *Id.* at 45. In June 2019, the Bell County grand jury presented evidence that Custance lied, concealed, and altered evidence during the Reed investigation. *Id.* The grand jury entered a true bill of tampering with physical evidence against Custance, and he pled guilty to the felony of tampering with physical evidence. *Id.*

The Rangers investigation found thirteen 5.56 fired cartridges, eight 9mm fired cartridges, and one 9mm brass fired cartridges recovered. *Id.* at 46. Except for the one brass cartridge, these findings are consistent with Baskett's handgun and rifles fired by the Custance and Hatfield. *Id.* Ranger Russell's analysis found a jam in Reed's semi-automatic .380 Cobra handgun's ejection port, and the magazine in the handgun filled to capacity with seven rounds of .380 ammunition. *Id.* at 48. While the Rangers analysis found Reed's DNA on the gun, there was no finding of fired .380 brass cartridges during their investigation of the scene. *Id.* at 50–51. Also, the analysis of Gun Shot Residue collected from Suess' face was inconclusive about where it came from. *Id.* at 52.

## II. LEGAL STANDARD

### A. Failure to State a Claim 12(b)(6)

Motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). A complaint will not be dismissed merely because it contains an imperfect statement of the legal theory supporting the claim asserted. *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014). Federal pleading rules

call for "a short and plain statement of the claim showing that the pleading is entitled to relief." *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

The ultimate question in a motion to dismiss is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). Two primary principles guide the plausibility analysis: courts must liberally construe the complaint in favor of the plaintiff and must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Courts do not evaluate the merits of the allegation but only consider whether plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A pleading needs to provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009).

### i. 42 U.S.C. § 1983 Fourth Amendment Excessive Force

42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. Two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).

"All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Plaintiff must allege: (1) an injury that (2) resulted directly and only from the

use of force that was excessive to the need and (3) the use of force was objectively unreasonable" to plead an excessive force claim under § 1983. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

To determine whether the individual Defendants' actions were objectively reasonable, the analysis is an "objective (albeit fact-specific) question whether a reasonable officer could have believed" that he was violating the plaintiff's constitutional rights "under the circumstances of the complained of action." *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "To gauge the objective reasonableness of the force used by the law enforcement officer, the Court must balance the amount of force used against the need for force." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004).

### *ii. Qualified Immunity*

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action barred by qualified immunity. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 793 (W.D. Tex. 2016) (Martinez, J.) (dismissing a plaintiff's claim based on qualified immunity). Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified

immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, No. 14-10228, 2019 WL 3928715 at 5 (5th Cir. Aug. 20, 2019), *as revised* (Aug. 21, 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008). If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

A heightened pleading requirement is imposed on a civil rights plaintiff suing a state actor in his individual capacity. *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985). To satisfy the heightened pleading requirement and maintain a § 1983 action against an official who raises a qualified immunity defense, a complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including "detailed facts supporting the contention that [a] plea of immunity cannot be sustained." *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 954 F.2d 1054, 1055 (5th Cir. 1992). Mere conclusory allegations are insufficient to meet this heightened pleading requirement. *Elliott*, 751 F.2d at 1479.

### iii. 42 U.S.C. § 1985(3) Conspiracy

To maintain a claim under § 1985(3), a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n. 12 (5th Cir. 2001) (quoting *Wong v. Stripling*, 881 F.2d 200, 202-3 (5th Cir. 1989)).

### *iv. 42 U.S.C. § 1983 Conspiracy*

To state a § 1983 conspiracy claim, a plaintiff must allege: (1) an agreement between a defendant and others, involving at least one person acting under color of state law to commit an illegal act; and (2) an actual deprivation of the plaintiff's constitutional rights in furtherance of that agreement. *See Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995); *see also Whisenant v. City of Haltom City*, 106 Fed. Appx. 915, 917, 2004 WL 1778247 at *1 (5th Cir. 2004). A plaintiff who asserts a conspiracy claim under a civil rights statute must plead the operative facts upon which their claim is based. *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991).

### *v. Intracorporate Conspiracy Doctrine*

"A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th. Cir. 1994) (citing *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). The Fifth Circuit and several district courts within the Circuit have applied this "intracorporate conspiracy" doctrine to entities other than corporations. *See Hilliard*, 30 F.3d at 653 (finding the doctrine applied to a school board and its members); *Thompson v. City of Galveston*, 979 F.Supp. 504, 512 (S.D. Tex. 1997) (finding the Galveston Police Department and its employees constitute a single legal entity incapable of conspiring with itself);

*Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F.Supp. 1022, 1034 (S.D. Tex. 1996) (applying doctrine to a medical school and its employees); *Moody v. Jefferson Parish Sch. Bd.*, 803 F.Supp. 1158, 1166 (E.D. La. 1992), *aff'd*, 2 F.3d 604 (5th Cir. 1993) (school board, principal, vice-principal, and various teachers were all employed by Jefferson Parish School Board, thus, were one entity).

While the Fifth Circuit does not speak to it directly, an exception exists where the alleged conspirators are acting for their own personal purposes. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir.1981) (stating in dicta that where "the officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation"); *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir.1998) (a possible exception to the doctrine exists where corporate employees act for their own personal purposes); *Nelson Radio*, 200 F.2d at 914 ("Nor is it alleged affirmatively, expressly, or otherwise, that these officers, agents, and employees were actuated by any motives personal to themselves.").

Another exception, that the Fifth Circuit has not addressed, existed when the defendants act outside the scope of their employment, their actions exceed the bounds of their authority, or they have engaged in unauthorized acts. *See e.g. Buschi v. Kirven*, 775 F.2d 1240, 1252–53 (4th Cir. 1985) (the doctrine does not apply when the employees exceed the bounds of their authority or they engage in unauthorized acts in furtherance of the conspiracy); *Cross v. General Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir.1983) (recognizing an actionable conspiracy where the alleged conspirators acted outside the scope of their employment).

### III. ANALYSIS

The ultimate question in a motion to dismiss is whether the complaint states a valid claim, the court must take all well-pleaded facts of the complaint as true and construe those facts in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). Granting dismissal is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

### A. Official Capacity

Suing a government official in his official capacity is another way of pleading against the entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). If the government entity receives notice and an opportunity to respond, an "official-capacity suit" is treated as a suit against the entity. *Kentucky*, 473 U.S. at 166. A suit against a municipal official in his official capacity is not a suit against the official personally because the real party in interest is the entity. *Id.*

Plaintiff alleges that at all material times during and after the incident involving Reed, Defendant Custance was a police officer acting in the course and scope of his employment for The City of Killeen and KPD. ECF No. 1 at 6. Furthermore, Plaintiff alleges that former Officer Custance violated his duty and responsibility to treat all persons in compliance with constitutional and statutory requirements and in compliance with the KPD's rules, regulations, policies and procedures, customs and/or practices relating to detention, arrests, and the use of deadly force. *Id.* at 6. Plaintiff also names the City of Killeen, the municipal body that funds the

KPD, as a party to the suit, alleging that the City has inadequate and unconstitutional policies and customs related to the use of force. *Id.* at 85.

Defendant Custance performed all the allegations that form the basis of Plaintiff's official capacity claim pursuant to policies, procedures, customs, and practices of the City of Killeen. Accordingly, because the City of Killeen received notice and an opportunity to respond, Plaintiff's claim against Defendant Custance in his official capacity is treated as a claim against the City. Defendant Custance's Motion to Dismiss Plaintiff's official capacity claim is **GRANTED**.

### B. Section 1983 Fourth Amendment Excessive Force and Qualified Immunity

Plaintiff asserts that Custance's use of force during the police raid deprived Reed of his constitutional right to be free from excessive and deadly force guaranteed by the U.S. Constitution's Fourth Amendment. ECF No. 1 at 77. "All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and (3) the use of force was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

Defendant Custance was a government official at the time of the raid. Therefore, Plaintiff must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm alleged and that defeat a qualified immunity defense with equal

specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). Additionally, even with sufficient development of the facts, if factual disputes still there remain, disputed issues of material fact relative to immunity go to a properly instructed jury to determine. *Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir. 1993).

### *i. An Injury*

Viewed in the light most favorable to the plaintiff, it is plausible Defendant Custance caused injury to Reed by shooting the bullet that killed him. During the raid, Defendant Custance fired his rifle in the direction of where he allegedly saw the muzzle flashes coming from. ECF No. 1 at 37. Given that we do not yet know whose bullet killed Reed, granting Custance's motion to dismiss is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). Without proof that Custance's gun did not fire the bullet that killed Reed, it is plausible that Custance shot the bullet that killed Reed.

Defendant Custance alleges that based on Plaintiff's facts, Custance's bullets came from a different trajectory than the one that ultimately killed Reed. ECF No. 20 at 5. Therefore, Custance could not have caused the injury. *Id.* However, even though Bright did not specifically identify Custance as the officer who shot Reed, Bright is bound by Rule 11 to allege those facts for which she has or will likely have evidentiary support. *Williams v. City of Denton, Tex.*, No. 4:17-CV-00811, 2019 WL 438403, at 10 (E.D. Tex. Jan. 10, 2019), *report & recommend. adopted*, 2019 WL 430913 (E.D. Tex. Feb. 4, 2019) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995)). To that extent, Bright is not yet able to identify which officer's bullet

killed Reed. The failure of specificity in regard to the particular defendant who caused the injury does not preclude the Plaintiff's claim because she has not yet had the benefit of discovery.

### ii. Excessive to the Need and Objective Unreasonableness

The clearly established law is that "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Bush*, 513 F.3d at 502. But, where a suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Plaintiff's facts allege that Reed did not raise his arm to shoot or shoot a gun during the police raid. Plaintiff supports this with Brocks statement, the officers' stories inconsistencies', and the lack of conclusive forensic proof that Reed fired his gun. These facts, viewed in the light most favorable to the plaintiff, sufficiently allege that Reed did not pose a threat to the officer who shot and killed Reed and therefore the officer's use of force was excessive to the need and objectively unreasonable.

### iii. Qualified Immunity

Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 728 (5th Cir. 2018); *see also Graham*, 490 U.S. at 396. During the arrest, "the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Id.* Whether Reed shot at the officers and if it was reasonable for the officers to believe Reed would shoot during the police raid are critical factors in determining the reasonableness of the officers' conduct. Given the uncertainty in the factual record, this is not an

obvious case in which the court can determine the entitlement to qualified immunity without further development of the facts. *See Backe*, 691 F.3d at 648.

Viewed in the light most favorable to the plaintiff, it is plausible that Reed's death resulted directly and only from Defendant Custance's excessive and objectively unreasonable use of force in violation of Reed's Fourth Amendment right to be free from excessive force. Plaintiff has asserted facts which, if true, are specific enough that they would overcome the defense of qualified immunity. However, the Court is unable to rule on the immunity defense without further clarification of the facts. Therefore, Defendant Custance's Motion to Dismiss Plaintiff's § 1983 unconstitutional use of excessive force claim is **DENIED**.

## C.  Section 1985(3) Conspiracy

Under § 1985(3), a plaintiff must show that class-based animus motivated the conspiracy. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1952). Plaintiff's alleged § 1985(3) conspiracy claim focuses on the Defendants' statements following the incident, the time between the incident and Defendants' interviews, and Defendant Custances tampering of evidence. ECF No. 1. Plaintiff's allegations fail to show underlying facts that suggest Custance and the other Defendants conspired to violate Reed's rights based on Reed's membership in a protected class of persons. Therefore, Custance's Motion to Dismiss Plaintiff's § 1985(3) conspiracy claim is **GRANTED**.

## D.  Section 1983 Conspiracy

There must be an actual deprivation of constitutional rights in furtherance of an agreement between conspirators to establish a § 1983 claim. *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960). After death, there can be no deprivation of rights within the constitutional and statutory framework as one is no longer a person and has no rights to be

deprived of. *Whitehurst v. Wright*, 592 F. 2d 834, 840 (5th Cir. 1979). Here, Plaintiff alleges that after the police raid, the Defendants reached an agreement to cover up their actions. ECF No. 1 at 16. Therefore, all events of the alleged cover-up took place after Reed's death. There are no allegations made that any conspiracy to kill Reed or cover up the events existed before the police raid took place. Allegations that the officers conspired to cover-up misconduct after the police raid does not alone point to a constitutional violation of Reed's rights.

For the first time in her response, Plaintiff states that the alleged conspiracy deprived Bright of her Fourteenth Amendment right to seek recovery for Reed's constitutional injuries and his wrongful death. ECF No. 24 at 16. The Fifth Circuit has held that the right of access to the courts as guaranteed and protected from unlawful interference and deprivations by the state. *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983). Plaintiff claims that Defendant Custance and the other officers carried out the alleged conspiracy to obstruct justice or deny Bright's right of access to the courts, amounting to a denial of equal protection of the laws by persons acting under color of state law. ECF No. 24 at 18. However, while the plaintiff does seek leave to amend her Complaint, the face of Plaintiff's Complaint does not plead this deprivation of Bright's right.

Plaintiff's Complaint fails to plead a violation of Reed's constitutional rights. Therefore, Defendant Custance's Motion to Dismiss the § 1983 conspiracy claim is **GRANTED**.

**E. Intracorporate Conspiracy Doctrine**

The intracorporate conspiracy doctrine would generally bar Plaintiff's conspiracy claims. *See Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th. Cir. 1994). As it is the general rule that the acts of the agent are the acts of the corporation. *Id.* Plaintiff alleges that the Defendant's reached an agreement amongst themselves to cover up their actions during the police raid. ECF No. 1 at 16.

The basis of Plaintiff's allegations are the inconsistencies in the officer's stories and Defendant Custances tampering with evidence during the investigation of the raid. *Id.* at 59.

However, while not addressed directly by the Fifth Circuit, viewed in the light most favorable to the plaintiff, Custance did engage in the alleged conspiracy for his own personal purpose of covering up his actions of allegedly shooting an unarmed Reed when Reed posed no threat. Further, Custance acted outside the scope of his employment by engaging in unauthorized acts by tampering with evidence. Assuming Plaintiff has successfully pled that there was a deprivation of Reed's constitutional rights because of a conspiracy by the Defendants under § 1985(3) or § 1983, viewed in the light most favorable to the plaintiff, the allegations are sufficiently specific to plead exceptions to the intracorporate conspiracy doctrine. Therefore, the intracorporate conspiracy doctrine does not apply, and Plaintiff's conspiracy claims are decided on other grounds.

### III. CONCLUSION

Accordingly, it is **ORDERED** Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part, in accordance with this order.

SIGNED this 31st day of March, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE